## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

<u>Mohamed Daoud</u>

      v.                               Civil No. 11-cv-4-JL

<u>James O'Mara, Superintendent,</u>
<u>Hillsborough County Department</u>
<u>of Correction, et al.</u>[1]

## <u>REPORT AND RECOMMENDATION</u>

Before the Court is Mohamed Daoud's complaint (doc. nos. 1, 20, 22, 23, and 24[2]), filed pursuant to 42 U.S.C. § 1983, alleging violations of Daoud's federal constitutional rights. The matter is presently before this Court for preliminary review to determine whether or not the complaint states any claim upon

---

[1]In addition to O'Mara, Daoud has named Hillsborough County House of Correction Medical Department Administrator Denise Ryan as a defendant to this suit.  For reasons stated below, I construe the complaint as intending to also sue HCHC Disciplinary Officer Fournier.

[2]Daoud has filed several documents that have been docketed as letters to the Court (doc. nos. 13, 20, 21, 22, 23, and 24). Construing these documents liberally, the Court finds that four of the letters, identified as docket entries numbered 20, 22, 23, and 24, appear to be attempts by Daoud to file addenda to the complaint, as they contain factual allegations and claims not included in the initial complaint.  In an Order issued simultaneously with this Report and Recommendation, the Court will direct the Clerk's Office to redocket the letters (doc. nos. 20, 22, 23, and 24) as addenda to the complaint.  The filings will heretofore be considered to be part of the complaint for all purposes.

which relief might be granted.[3]  See 28 U.S.C. § 1915A (requiring court to screen prisoner civil actions); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing magistrate judge to conduct preliminary review of complaints filed by prisoners).

### Standard of Review

Under this Court's local rules, when an incarcerated person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se

---

[3]Also pending before the Court is plaintiff's Motion for Injunctive Relief (doc. no. 2).  This Report and Recommendation does not address plaintiff's request for preliminary injunctive relief.  The findings here pertain only to the statutorily required initial review of prisoner-filed pleadings.  See 28 U.S.C. § 1915A.

pleadings to avoid inappropriately stringent rules and
unnecessary dismissals).  This review ensures that pro se
pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon
which relief could be granted, the Court must consider whether
the complaint, construed liberally, Erickson, 551 U.S. at 94,
"contain[s] sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949
(2009) (citation omitted).  "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged."  Id. at 1949.  Inferences
reasonably drawn from the plaintiff's factual allegations must
be accepted as true, but the Court is not bound to credit legal
conclusions, labels, or naked assertions, "devoid of 'further
factual enhancement.'"  Id.  (citation omitted); see Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations
must be enough to raise a right to relief above the speculative
level, on the assumption that all the allegations in the
complaint are true (even if doubtful in fact)."); Sepúlveda-
Villarini v. Velázquez-Torruella, 628 F.3d 25, 29 (1st Cir.
2010) ("The make-or-break standard . . . is that the combined
allegations, taken as true, must state a plausible, not a merely

conceivable, case for relief."). The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." Bell Atl. Corp., 550 U.S. at 556. Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 129 S. Ct. at 1950 (citation omitted).

## Background[4]

Mohamed Daoud is a pretrial detainee at the Hillsborough County House of Corrections ("HCHC"). Daoud was transferred to the HCHC from the New Hampshire State Prison ("NHSP") on August 7, 2010, where he had been incarcerated since January 2010.

### 1.   Mental Health Care

Daoud states that, while at the NHSP, he was prescribed medication for serious mental health problems by an NHSP psychiatrist. Upon admission to the HCHC, however, Daoud was denied that previously prescribed medication, or any medication to treat his mental health problems. Daoud has filed multiple requests for mental health treatment and medication, but has not

---

[4]The facts recounted here are construed from plaintiff's written pleadings, and do not include additional evidence presented at the January 18, 2011, hearing on plaintiff's motion for preliminary injunctive relief.

received satisfactory treatment for his continuing mental health problems.  Daoud filed grievances with HCHC Superintendent James O'Mara, but O'Mara failed to take action to remedy the situation.

Daoud claims that, despite many requests, he was not able to see a doctor who can prescribe medication for him until he filed a motion for preliminary injunctive relief in this Court. At that time, Daoud states he was hastily provided an appointment with a psychiatrist.

2.   Retaliation

Daoud states that he was previously incarcerated at the HCHC in 2008.  During that incarceration, Daoud was charged with spitting on an HCHC Corrections Officer.  Daoud was ultimately convicted of that charge and sentenced to a suspended NHSP term. The officer upon whom Daoud spit still works at the HCHC.

Daoud states that when he arrived at the HCHC on August 7, 2010, HCHC officers, in retaliation for Daoud's prior spitting incident, placed Daoud in administrative segregation, also known as "the hole," for no legitimate reason.  Daoud states that these officers, who are not named in the complaint, have also beaten him up, called him names, spit in his food, searched his cell for no reason, read his legal paperwork, and sometimes denied him food.  Daoud alleges the officers treat him

5

differently than other inmates due to his history at the HCHC.
Daoud believes that in addition to retaliation, the officers
committing these acts are motivated by discriminatory animus
based on Daoud's race, ethnicity, and religion.

Daoud has grieved these incidents to O'Mara and requested a
transfer to another jail because, he claims, he is in danger of
harm from the harassing and abusive officers if he remains at
the HCHC.  He has not been moved and asserts that he remains in
harm's way.

3.   Disciplinary Incidents

On September 22, 2010, Daoud was involved in a fight with
an inmate named Brown.  The fight occurred on HCHC Unit 2D where
both Daoud and Brown were housed.  Daoud states that as a result
of the fight, he was moved to the HCHC's Restrictive Housing
Unit ("RHU"), but Brown was not.  HCHC Disciplinary Officer
Fournier would not tell Daoud whether or where Brown was moved
after the fight.  After being released from RHU, Daoud was
returned to Unit 2D where Brown was still housed, in violation
of a "keep away," an order from the HCHC administration
directing that Daoud not be housed or otherwise placed in
contact with Brown.

Housed on the same unit, Daoud and Brown fought again.
After the second fight, both Daoud and Brown were charged with

6

disciplinary violations arising out of the altercation.  Both
Daoud and Brown were found guilty.  As a sanction, Fournier gave
Brown five days in RHU, after which Brown was returned to Unit
2D.  Daoud, however, was placed in maximum security for a period
of time, and was thereafter housed in RHU, a placement which
imposes more restrictions on inmates than are in place on Unit
2D.

On December 10, 2010, Daoud was in his cell when an inmate
named Stanford ran into Daoud's cell and hit him.  Daoud states
that he responded physically only to the extent necessary to
defend himself.  Both Stanford and Daoud were charged with
disciplinary violations as a result of the incident.  Officer
Fournier found Stanford guilty and sanctioned Stanford with
seven days in RHU.

Daoud claims that prior to the commencement of his own
disciplinary hearing regarding the December 10 incident, he saw
that Fournier had already written down that Daoud would receive
a sanction of fifteen days in RHU.  Daoud confronted Fournier
about his prejudgment of the disciplinary matter.  At that time,
Fournier walked away from Daoud without finishing the hearing.
Fournier then entered a finding of guilty against Daoud on the
disciplinary charge and sanctioned Daoud with fifteen days in
RHU.

The Claims[5]

Daoud raises the following claims as grounds for relief:

1.   Defendants have violated Daoud's Fourteenth Amendment rights by, acting with deliberate indifference, denying him adequate care for his serious mental health needs.

2.   Defendants have violated Daoud's Fourteenth Amendment right to constitutionally adequate conditions of confinement by: (a) spitting in his food; (b) beating him up; (c) placing him in "the hole" for no reason; (d) denying him food; (e) conducting harassing searches of his cell; (f) reading his legal paperwork; and (g) calling him names.

3.   Defendant O'Mara has endangered Daoud, in violation of the Fourteenth Amendment, by failing to move him out of the HCHC where he faces a continued threat of harm as long as he is housed in that facility.

4.   Defendant Fournier has endangered Daoud, in violation of the Fourteenth Amendment, by housing him with inmate Brown in violation of a "keep away" order and with knowledge that Daoud and Brown had a history of fighting.

5.   Defendant Fournier has denied Daoud due process by finding him guilty of a disciplinary sanction and imposing a

---

[5]The claims, as identified herein, will be considered to be the claims raised in the complaint for all purposes.  If Daoud objects to this identification of the claims, he must do so by properly filing a motion to amend his complaint.

sentence when Daoud was not afforded a due process hearing before an impartial decisionmaker.

6.   Defendants have discriminated against Daoud, in violation of the Fourteenth Amendment, based on his race, ethnicity, and religion.

## Discussion

### I.   42 U.S.C. § 1983

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983[6]; City of Okla. City v. Tuttle, 471 U.S. 808, 829 (1985); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  Here, Daoud claims that the defendants, all state actors, have violated rights accruing to him under federal law.  As such, this action arises under § 1983.

---

[6]42 U.S.C. § 1983 provides that:

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

II.  Pretrial Detainee Status

Daoud is, and has been since August 7, 2010, a pretrial detainee at the HCHC.  Daoud's claims relating to the conditions of his confinement, therefore, must be analyzed under the Fourteenth Amendment.  See Mosher v. Nelson, 589 F.3d 488, 493 n.3 (1st Cir. 2009) (citing Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002)); see also Lyons v. Powell, 838 F.2d 28, 29 (1st Cir. 1988) (per curiam) (rejecting an Eighth Amendment challenge to pretrial detention).

Detainees have a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free of punishment.  See Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005) (citing O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997)).  "'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'" Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 9 (1st Cir. 2007) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977)).  However, challenged conditions or restrictions which can be rationally related to some legitimate administrative goal or security concern generally will not be deemed unconstitutional "punishment."  O'Connor, 117 F.3d at 15.

Because the Due Process Clause prohibits the infliction of punishment on a person prior to a judgment of conviction, the

10

issue in evaluating claims by a pretrial detainee is ultimately
whether the conditions of confinement were reasonably related to
a legitimate state interest or were intended instead as
punishment for the detainee's charged offense.  See Surprenant,
424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d
315, 317 (1st Cir. 1995).  The Court will review Daoud's claims
applying this standard.

III. Mental Health Care

The Eighth Amendment protects convicted prison inmates from
prison officials acting with deliberate indifference to their
serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 831
(1994).  The Fourteenth Amendment, which protects the conditions
of confinement for pretrial detainees, is at least as protective
of a detainee's right to medical and mental health care as the
Eighth Amendment.  See Surprenant, 424 F.3d at 18 (The
parameters of the liberty interest at stake in the Fourteenth
Amendment claim of a detainee "are coextensive with those of the
Eighth Amendment's prohibition against cruel and unusual
punishment."); DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir.
1991); Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991)
(recognizing that deliberate indifference to an inmate's mental
health needs violates the Eighth Amendment); United States v.
Ayala López, 327 F. Supp. 2d 138, 144 (D.P.R. 2004) (citing,

11

inter alia, Fischer v. Winter, 564 F. Supp. 281, 298 (N.D. Cal. 1983) ("Since sentenced inmates may be held under conditions that are punitive, while pretrial inmates may not be, the courts have said that the due process clause affords greater protection to unsentenced inmates than the Eighth Amendment affords to the convicted.")).

The Supreme Court has adopted a two-part test for reviewing medical care claims under the Eighth Amendment.[7]  See Farmer, 511 U.S. at 834.  A court must first determine if the prisoner has alleged facts sufficient to show that he or she has not been provided with adequate care for a "serious medical need." Farmer, 511 U.S. at 834.  Second, the court must determine if the complaint contains sufficient allegations to show that defendants acted with deliberate indifference.  See id. Allegations that simply show "substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation."  Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007).  A serious medical need is one that involves a substantial risk of serious harm to the prisoner if it is not adequately treated.  See Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); see also

_____

[7]The Court will construe the claims as raised under the Fourteenth Amendment, and the two-part test is applicable to those claims, so construed.  See Surprenant, 424 F.3d at 18.

Gaudreault v. Mun'y of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").

To be found deliberately indifferent, a prison official must be both subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also actually draw the inference. See Farmer, 511 U.S. at 837. Deliberate indifference "may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" Ruiz-Rosa, 485 F.3d at 156 (citation omitted).

"In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir. 2010) (internal citation and quotations omitted). Deliberate indifference may be found "in wanton decisions to deny or delay care, where the action is reckless, not in the tort law sense but in the appreciably stricter criminal-law sense . . . ." Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) (internal citation and quotations omitted).

Deliberate indifference is not demonstrated by an inmate's disagreement with his treatment, by an allegation that better treatment than what was provided is available, or by a difference of opinion among medical professionals regarding diagnosis and treatment.  See Feeney v. Corr. Med. Servs., 464 F.3d 158, 162 (1st Cir. 2006) ("When a plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation" (internal citations omitted)).

        A.    Serious Need

While Daoud has not named his particular mental health diagnosis, he has stated that he suffers from multiple mental health conditions, and that those conditions were treated with medication over a period of months at the NHSP.  Construing these assertions generously, I find, for purposes of preliminary review, that these allegations suffice to allege a serious mental health condition in need of treatment.

        B.    Inadequate Care

Daoud alleges that since his arrival at HCHC, his mental health care has been essentially nonexistent.  Daoud alleges that he has serious mental health needs requiring medication,

14

and that, in fact, a psychiatrist at the NHSP prescribed this medication for him while he was incarcerated at the NHSP. Despite numerous requests for mental health treatment at the HCHC, Daoud's prescribed medications have not been given to him, and he has been denied access to a psychiatric professional for five and a half months.  By alleging that he has been denied any care for problems in need of treatment, and that his access to psychiatric care was significantly delayed, Daoud alleges he has been denied adequate mental health care at the HCHC.

C.   Deliberate Indifference

Daoud alleges that he was given medications for his mental health needs at the NHSP, and that, utilizing both medical request slips and grievance forms, he has requested mental health care and medications numerous times at HCHC.  Daoud has therefore alleged that at least Ryan and O'Mara were aware of his need for treatment.  Daoud further alleges that, for five and a half months, neither the medical staff, nor the administrative staff did anything to treat him or give him access to treatment.  Accordingly, the Court finds that Daoud has stated the minimum sufficient facts necessary to establish a Fourteenth Amendment claim for deliberate indifference in the denial of adequate care for Daoud's serious mental health needs, and, in an Order issued simultaneously with this Report and

Recommendation ("the Simultaneous Order"), the Court will direct that this claim proceed against named defendants Ryan and O'Mara.[8]

IV.  Conditions of Confinement

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." Helling v. McKinney, 509 U.S. 25, 31 (1993) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  The Constitution requires prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.  See Farmer, 511 U.S. at 832-33; Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210,

_____

[8]At this time, Daoud has named only Ryan, O'Mara, and HCHC Disciplinary Officer Fournier as defendants to this action. Should Daoud seek to add any other HCHC employees to this action, he must move to amend his complaint to provide the Court with the names of those individuals and the actions each of those individuals have taken that violate Daoud's rights.  To obtain names of medical or other corrections staff members that are unknown to Daoud, he may, upon service of this action on Ryan, O'Mara, and Fournier, serve those defendants with interrogatories to obtain the identities of additional defendants, pursuant to Fed. R. Civ. P. 33.  That rule states, in pertinent part:  "Unless otherwise stipulated or ordered by the court, a party may serve upon any other party no more than 25 written interrogatories, including all discrete subparts" to be answered by the party served, who shall furnish such information as is available to that party.  Fed. R. Civ. P. 33; see also Fed. R. Civ. P. 26(a)(1)(B)(iv) & 26(d)(1) (actions brought pro se by inmates in state custody are exempt from discovery moratorium).

225 (1990); Hudson v. Palmer, 468 U.S. 517, 526-527 (1984);
Estelle, 429 U.S. at 103.

As previously discussed, pretrial detainees have a
constitutional right under the Due Process Clause of the
Fourteenth Amendment to be free of punishment.  See Surprenant,
424 F.3d at 15 (citing O'Connor, 117 F.3d at 15).  Loss of
freedom of choice and privacy are inherent incidents of any
confinement, however, and therefore, if a particular condition
or restriction of pretrial detention is reasonably related to a
legitimate governmental objective, it does not, without more,
constitute punishment.  See Bell v. Wolfish, 441 U.S. 520, 537
(1979); O'Connor, 117 F.3d at 15.  The restriction or condition
imposed, however, must not be exaggerated or excessive relative
to its purpose.  Bell, 441 U.S. at 538.  The issue in evaluating
claims by a pretrial detainee, therefore, is ultimately whether
the challenged conditions of confinement were reasonably related
to a legitimate state interest or were intended instead as
punishment.  See Surprenant, 424 F.3d at 13; Collazo-Leon, 51
F.3d at 317.

A.   Denial of Food, Spitting in Food, and "The Hole"

Daoud alleges that, to punish him for previously spitting
on an HCHC Corrections Officer, HCHC officers have spit in his
food, at times denied him food, and placed him, without cause,

17

in restrictive housing.  Nothing in Daoud's allegations, which
the Court must presume to be true at this stage of the
proceedings, indicates that these acts were taken in furtherance
of any legitimate penological objective.  Daoud has stated
sufficient facts to assert a claim that he has been subjected to
unconstitutional conditions of confinement, in that he has been
subjected to unnecessarily restrictive housing conditions and
the denial of sufficient, sanitary food, in order to inflict
punishment on him, in violation of his Fourteenth Amendment
rights.

The Court finds that Daoud has stated claims upon which
relief might be granted for acts committed by unnamed officers.
Because Daoud has not named any specific officers as defendants
to this claim, these claims cannot be served at this time.  To
proceed on these claims, Daoud must file a motion to amend his
complaint to add the specific defendants responsible for the
harms alleged.  Once the complaint has been amended to name
defendants to these claims, the Court will authorize service of
these claims on those individuals.

B.   Verbal Abuse and Harassment

Daoud claims that unnamed defendants verbally harassed him
by calling him names.  Inmates, even those held pretrial, have
no protected liberty interest in avoiding verbal harassment by

jail officials.  See Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) ("Fear or emotional injury which results solely form verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest."); Shabazz v. Cole, 69 F. Supp. 2d 177, 198-201 (D. Mass. 1999) (citing authority to explain that racial slurs and verbal threats do not violate a prisoner's constitutional rights). Daoud cannot assert a claim under § 1983 for name-calling. Accordingly, Daoud's verbal harassment claim should be dismissed.

Daoud also claims that he has been subjected to harassing cell searches and that his legal paperwork has been read.  These allegations, even taken as true, without more, amount to de minimis incidents of harassment with no apparent injury or threat of injury resulting.  Daoud has not stated sufficient facts supporting these claims to allow the Court to conclude that the acts were intended as improper punishment. Accordingly, the Court cannot find that any constitutional violation has been committed by subjecting an inmate to more cell searches than he would prefer to endure, or by an officer reading Daoud's unspecified legal paperwork.

V.   <u>Excessive Force</u>

The Fourteenth Amendment protects a pretrial detainee from excessive force that amounts to punishment.  <u>See</u> <u>Ruiz-Rosa</u>, 485 F.3d at 155; <u>Surprenant</u>, 424 F.3d at 18.  In determining whether a plaintiff has stated a claim for unconstitutionally excessive force, a court should look to the following four factors: (1) the need for the use of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of injury inflicted, and (4) "whether the force was applied in good faith to maintain or restore discipline or maliciously and sadistically to cause harm."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992).

Daoud claims he was subjected to beatings by HCHC corrections officers motivated by their desire to retaliate against him for having previously spit on an HCHC officer, rather than in response to any immediate situational provocation.  Daoud's allegations, so construed, assert that the force inflicted upon him when he was beaten was unnecessary, unprovoked, and intended to maliciously inflict harm, rather than to restore or maintain order.  While Daoud does not describe what, if any, physical injury he has suffered, his allegations are sufficient to state a claim for excessive force upon which relief might be granted.

20

Again, Daoud does not name any individual HCHC officer
responsible for inflicting force upon him and will have to amend
his complaint once those names are obtained if he wishes to
proceed with this suit against the individual officers.  Daoud
does, however, state that he filed grievances with O'Mara's
office complaining of the harsh treatment he endured at the
hands of HCHC officers, including being beaten.  Daoud claims
that neither O'Mara nor any other responsible HCHC official
acted to stop officers from physically abusing Daoud.
Accordingly, the Court finds that O'Mara, as an individual
responsible for the HCHC officers' treatment of inmates, was
notified that Daoud had been beaten without provocation and for
no legitimate purpose, and failed to take steps to protect
Daoud, resulting in Daoud's continued exposure to physical
abuse.  The Court therefore finds that Daoud has stated
sufficient facts to assert an excessive force claim against
O'Mara in his supervisory capacity.  See Maldonado v. Fontanes,
568 F.3d 263, 274-75 (1st Cir. 2009) (supervisory liability
under a theory of deliberate indifference "'will be found only
if it would be manifest to any reasonable official that his
conduct was very likely to violate an individual's
constitutional rights.'" (internal citation omitted)).
Accordingly, the Court will direct that the claim proceed
against O'Mara in the Simultaneous Order.

VI.   Endangerment

Corrections officials must "take reasonable measures to guarantee the safety of the inmates" in their care.  Palmer, 468 U.S. at 526-27.  An inmate does not have to wait until he or she is actually assaulted before obtaining relief.  See Benefield v. McDowall, 241 F.3d 1267, 1272 (10th Cir. 2001).

> Having incarcerated "persons [with] demonstrated
> proclivity[ies] for antisocial criminal, and
> often violent, conduct," having stripped them of
> virtually every means of self-protection and
> foreclosed their access to outside aid, the
> government and its officials are not free to let
> the state of nature take its course.  Prison
> conditions may be "restrictive and even harsh,"
> but gratuitously allowing the beating or rape of
> one prisoner by another serves no "legitimate
> penological objective," any more than it squares
> with "evolving standards of decency."

Farmer, 511 U.S. at 833 (internal citations omitted).  A detainee's Fourteenth Amendment right not to be punished in advance of a conviction is violated where a jail official is "deliberately indifferent to a substantial risk of serious harm . . ., including violence inflicted by one detainee upon another detainee."  Mosher, 589 F.3d at 493-94.

Not every injury suffered at the hands of a prisoner, however, gives rise to a cause of action by the injured prisoner.  Farmer, 511 U.S. at 834.  To state a claim based on the alleged failure to prevent harm, plaintiff is required to first demonstrate that the conditions complained of, considered

objectively, pose "a substantial risk of serious harm."  Id. at 834, 836.  "This determination requires the fact-finder to consider the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure [to the danger]."  Pack v. Artuz, 348 F. Supp. 2d 63, 79 (S.D.N.Y. 2004).  To violate the Constitution, the conditions presenting the risk of future harm "must be 'sure or very likely to cause serious illness and needless suffering,'" and give rise to 'sufficiently imminent dangers.'"  Baze v. Rees, 553 U.S. 35, 50 (2008) (quoting Helling, 509 U.S. at 33-35).

Second, a prison official charged with failing to protect an inmate from harm must have acted with a "sufficiently culpable state of mind."  Farmer, 511 U.S. at 834.  This means that the official must have acted with "deliberate indifference" to the inmate's health and safety, in that he must be aware of and disregard a known risk by "'failing to take reasonable measures to abate the harm.'"  Kelley v. Wall, 2010 WL 5176172, *2-4 (D.R.I. 2010) (quoting Fournier v. N. N.H. Corr. Facility, No. 070264, 2008 WL 2741117, at *3 (D.N.H. 2008)).

A.   HCHC Disciplinary Officer Fournier

To state a constitutional claim that defendant Fournier failed to protect him, Daoud must allege that Fournier was deliberately indifferent to a substantial risk of serious harm

to Daoud.  Farmer, 511 U.S. at 834, 836.  First, Daoud must
establish that he was subjected to a substantial risk of serious
harm.  Id.  Here, Daoud has alleged that he was in a fight with
Brown, and that when he was returned to Unit 2D after the fight,
he got into another fight with Brown.  While it is conceivable
that a fight could present a substantial risk of serious harm,
Daoud has not alleged any specific facts, outside of the
assertion that a physical altercation occurred, to show that
such a risk existed.  Accordingly, in the Simultaneous Order,
the Court will give Daoud the opportunity to state additional
facts that would support the plausibility of his assertion that
returning to Unit 2D (where Brown was housed) presented "a
substantial risk of serious harm."  Such facts might include,
but are not limited to, any inherent threat to Daoud in a fight
with Brown, based, for example, on the relative size and
strength of the two inmates, the content of specific realistic
threats from Brown, the history between Brown and Daoud, Brown's
proclivity, if any, for violence or causing harm, the use of
weapons, or any serious harm that actually resulted from, or
could reasonably have resulted from, the second fight between
Brown and Daoud.

Daoud must also assert facts demonstrating that Fournier
knew of the substantial risk of serious harm posed to Daoud by
Brown, and that Fournier disregarded the risk by placing both

inmates on Unit 2D.  Daoud has already stated that after the first fight with Brown, he obtained a "keep away," an order from the HCHC administration directing prison staff not to place him into contact with Brown.  Daoud must assert specific facts showing that Fournier was aware of the risk, either because he knew of the "keep away" issued in this case and that he knew why that order was issued, or otherwise.  Daoud must allege that, despite that knowledge, Fournier disregarded the risk and placed Daoud and Brown back on the same housing unit, giving rise to the opportunity for the risk to come to fruition.

Because the Court finds that Daoud has failed at this time to state sufficient facts to support a claim that Fournier was deliberately indifferent to a substantial risk of serious harm to Daoud, but because the Court cannot preclude the possibility that such facts exist, Daoud will be provided with the opportunity to amend his complaint to make the showing of both a "substantial risk of serious harm" in returning him to  Unit 2D after the fight, and that Fournier knew of and disregarded that risk.[9]

_____

[9]Although Fournier is not named in the caption of Daoud's complaint, the Court construes the complaint to name Fournier as a defendant to this civil rights action; Fournier is identified in the complaint and is alleged to have violated Daoud's constitutional rights.

B.   HCHC Superintendent O'Mara

Daoud has alleged that he is also suffering harm from
corrections officers motivated by Daoud's history of spitting on
an officer.  Daoud states that he has notified O'Mara of the
harm he is suffering (i.e., beatings by officers) and his
legitimate concern that he will be subjected to future harm.
The Court finds that Daoud has alleged facts sufficient to state
a claim that O'Mara's failure to respond to Daoud's request for
protection created a serious risk of harm to Daoud.  For the
reasons stated above in reference to Daoud's excessive force
claim, the Court finds that O'Mara is responsible in both his
individual and supervisory capacities, for endangering Daoud by
failing to act to curtail the physical threat to him from HCHC
officers.  In the Simultaneous Order, the Court will direct
service of Daoud's endangerment claim on O'Mara.

VII. Procedural Due Process

"Pretrial detainees, unlike convicts, have a liberty
interest in avoiding punishment – an interest that derives from
the constitution itself."  Surprenant, 424 F.3d at 17.
Convicted inmates that are punished for institutional
disciplinary offenses cannot state a violation of their
procedural due process rights where the sanction imposed does
not create an "atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life." Sandin
v. Conner, 515 U.S. 472, 484 (1995).

The holding in Sandin, however, is inapplicable to pretrial
detainees. See Surprenant, 424 F.3d at 17. Pretrial detainees
can be punished for infractions of institutional rules, provided
the punishment is proportionate to the offense. See id. at 13;
Bell v. Wolfish, 441 U.S. 520, 537-38 (1979). However, because
pretrial detainees have not been afforded the process of a
criminal trial and sentencing prior to their incarceration, they
may not be subjected to punishment for institutional
disciplinary violations without first being afforded due
process. See Surprenant, 424 F.3d at 17. The process due to
pretrial detainees charged with a disciplinary violation
includes written notice of the charges at least twenty-four
hours in advance of a disciplinary hearing, the ability to call
witnesses and present documentary evidence at the hearing, and
most importantly, an impartial decisionmaker. See id. at 16
(citing Wolff v. McDonnell, 418 U.S. 539, 564, 566, 570-71
(1974)).

Daoud alleges that he was subjected to confinement of
fifteen days in the RHU as punishment for a disciplinary
infraction without the benefit of a due process hearing
comporting with the requirements set forth in Wolff and
Surprenant. Daoud specifically alleges that he was denied an

27

impartial decisionmaker because Fournier determined Daoud's guilt and punishment prior to the hearing.  Further, once Daoud confronted Fournier with the fact that he had entered a written decision prior to the hearing, Fournier declined to finish the hearing, and entered a guilty finding and punitive sanction. These allegations state a claim for a denial of the process due to a pretrial detainee charged with a disciplinary offense.  In the Simultaneous Order, the Court will direct that the due process claim will be served on HCHC Officer Fournier.

## VIII. <u>Discrimination</u>

Daoud alleges that defendants have discriminated against him based on his race, ethnicity and religion.  Daoud's allegations on this score, however, are entirely unsupported by any specific factual allegations that would allow this Court to find or infer that he was being subjected to illegal discrimination.  Daoud simply asserts, without more, that he is the victim of discrimination.  A bald, general assertion is insufficient to support a discrimination claim and, therefore, that claim should be dismissed as conclusory and unsupported by any specific factual allegations.

## Conclusion

For the foregoing reasons, the Court recommends that Daoud's claims alleging verbal harassment, improper cell searches, improper reading of legal mail, and discrimination be dismissed from this action for failure to state a viable claim. The claims asserting Fourteenth Amendment violations based on unnamed officers' spitting in Daoud's food, denying him food, or placing him in the hole are cognizable, but may not be served until Daoud amends his complaint to name defendants who are responsible for these incidents. The Court also finds that Daoud has stated insufficient facts to assert an endangerment claim against defendant Fournier at this time and, as directed in the Simultaneous Order, will give Daoud the opportunity to amend his complaint to include additional facts in support of that claim. In an Order issued simultaneously with this Report and Recommendation, the Court will direct service of the remaining claims in the complaint on defendants.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. See See 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waves the right to appeal the district court's order. See Sch. Union No. 37 v.

United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).


_____
Landya B. McCafferty
United States Magistrate Judge


Date:  February 14, 2011

cc:  Mohamed Daoud, pro se
     Carolyn Kirby, Esq.


LBM:jba