UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Mohamed Daoud

    v.                                      Civil No. 11-cv-004-JL

James O'Mara, Superintendent,
Hillsborough County Department
of Corrections, et al.

**O R D E R**

Before the Court is Mohamed Daoud's motion to transfer his sentence (doc. no. 43) and the addenda to that motion (doc. nos. 49 and 50). Defendants object to the motion (doc. nos. 46 and 47).

**Background**

Daoud is a pretrial detainee at the Hillsborough County House of Corrections ("HCHC"). In the underlying action, Daoud asserts that he has been denied access to adequate mental health care, deprived of constitutional conditions of confinement, subjected to excessive force, and deprived of due process in a disciplinary hearing.

Daoud previously filed a motion for a preliminary injunction (doc. no. 2) seeking an order directing the jail to properly treat him for mental illness. After considering testimony and evidence, this magistrate judge recommended that

the motion be denied, upon finding that Daoud failed to meet his burden to demonstrate that he would be irreparably harmed unless the court issued a preliminary junction, see Report and Recommendation (doc. no. 33).  The district judge approved the recommendation and declined to issue an injunction regarding Daoud's mental health treatment.  See Order (doc. no. 41).

I.   Allegations in Motion to Transfer

Daoud has now filed a second motion for preliminary injunctive relief entitled "Motion to Transfer Sentence to Another Jail" (doc. no. 43).  He has also filed addenda to that motion (doc. nos. 49 and 50).  Daoud requests that this court direct the HCHC to transfer Daoud to another facility because HCHC personnel are retaliating against him for filing this lawsuit by:  (1) beating him up and spraying him with Oleoresin Capsicum Spray ("OC Spray") that causes his eyes and skin to itch and burn; (2) denying him food and causing him to lose a significant amount of weight; (3) subjecting him to unconstitutionally restrictive and inhumane housing conditions; (4) continuing to deny Daoud mental health medications; and (5) subjecting Daoud to unwarranted disciplinary proceedings and sanctions.  Daoud states that HCHC officials are unwilling to transfer him to another jail because another facility would

likely provide him with mental health medications, and thus damage the defendants' legal position in this lawsuit.

Daoud points to several particular incidents which, he claims, warrant the granting of an injunction directing the HCHC to transfer him to another facility for his own safety. Specifically, Daoud states that on March 10, 2011, he was improperly given a disciplinary ticket by HCHC Field Training Officer ("FTO") Mackey for allegedly lying to an officer.  The hearing on that ticket was presided over by Corrections Officer ("C.O.") Fournier, who issued a guilty finding and sentenced Daoud to additional time in restrictive housing.  Because Daoud had previously asserted a claim in this case against Fournier for denying Daoud due process in a disciplinary hearing, Daoud asserts that Fournier was not impartial in the resolution of the March 10 disciplinary charge.

Daoud alleges that, on March 24, 2011, he was beaten and sprayed with chemical spray for almost two hours.  Daoud claims that after that beating, he was left in his cell for two days thereafter without a mattress or any food.

An incident report prepared by HCHC Sgt. Brown and submitted to the court in support of Daoud's motion to transfer sentence (doc. no. 49-1) indicates that on March 24, 2011, just before noon, Daoud had attempted to flood his cell by plugging his toilet with a blanket, while covering his cell door with a

3

mattress.  Daoud was in his cell wrapped in a sheet and holding a pillow in the back of his cell yelling for the officers to spray him and yelling "I will show you what a man is."  Daoud refused to come to the front of the cell to speak with the officer and refused to be removed from the cell so that it could be cleaned, stating that he would kill staff and that he would die before kneeling at the cell door to be handcuffed.

The incident report states that Daoud was then sprayed with OC Spray, and the cell door was then closed.  Daoud proceeded to laugh and cough and continued to refuse to leave his cell, at which time he was sprayed again.  Daoud was then offered a shower every fifteen minutes, provided that he first comply with being appropriately restrained, which Daoud refused.  The incident report indicates that the water was turned off in Daoud's cell, and that Daoud's blankets, mattress, and sheets were removed from his cell, and that Daoud was allowed to have a safety blanket during third shift.

HCHC personnel videotaped the incident pursuant to HCHC Sgt. Brown's orders.  Daoud claims the incident report is a fabrication, and that the officers were trying to kill him.  Daoud also denies that he was offered any shower or means of washing the spray off of his body.  Daoud asserts the videotape will prove that his version of events is correct.

4

Defendants have attached to their objection a report prepared after an incident that occurred on March 24, 2011, prior to the alleged cell-flooding incident (doc. 49-1). That report indicates that Daoud was involved, at approximately 9:45 a.m. on that date, in a verbal altercation with another inmate that appeared to be a preamble to a physical fight. Officers intervened in the incident, speaking to both Daoud and other inmates involved or who witnessed the argument. Daoud, who was ultimately moved out of the unit, allegedly shouted a series of invectives at the officers who were restraining and moving him. Daoud, very agitated, continued to rant about his mistreatment at the hands of HCHC personnel. Unable to calm him down, HCHC personnel placed Daoud on a maximum security unit. Although the report states that no injuries were observed or reported, a nurse was called to check on Daoud, but Daoud refused to be seen by the nurse.

Daoud alleges in his motion that on April 22, 2011, he was told to leave his cell for a cell search. When he asked why, Daoud was sprayed with a chemical spray for almost an hour. The following day, an HCHC nurse treated Daoud for eye irritation and for itching and burning skin. Daoud was advised he would be charged as a result of the incident, but it is not clear on the face of the pleadings whether any jail official stated an intent to charge Daoud with a disciplinary infraction, a criminal

charge, or both. Daoud implies that jail officials are seeking to charge him criminally so that they can keep him in jail for the rest of his life.

Daoud's addendum to the motion to transfer (doc. no. 49) includes a list of potential inmate witnesses for an incident occurring on "4/24/2011." No further information on events occurring on that date is set forth in the motion to transfer.

II. Scope of Hearing

A. Medication/Mental Health Needs

Daoud has already litigated the issue of whether he is entitled to a preliminary injunction ordering that he be provided specific mental health treatments, including medications, at the HCHC. This court has previously found that the HCHC officials' decision not to prescribe mental health medications does not amount to irreparable harm warranting the issuance of a preliminary injunction in this case, as the HCHC had provided Daoud with a psychiatric evaluation and made a medical determination that there was no present need for medication. Jail officials also expressed their intent to follow up with Daoud regarding his mental health needs.

Daoud now states that the medical and/or mental health staff at the HCHC continue to deny him medication, Daoud's preferred treatment for his mental health needs. Daoud has not

6

indicated any change in circumstances indicating that the HCHC has failed to follow up with him, or that his mental health status has altered in a manner requiring some additional care that he has not received.

Daoud states that he obtained an extensive evaluation with a doctor from Boston who came to the jail to evaluate Daoud for post-traumatic stress disorder. Daoud indicates that the Boston doctor opined that Daoud should be receiving medications that he is not getting at the jail. A doctor's opinion that Daoud should be afforded different treatment than that presently being prescribed, although it may prove relevant to the merits of the underlying case, does not require this court to reopen the inquiry into whether Daoud is likely to suffer irreparable harm if the court fails to intervene. Accordingly, on these allegations, the court will not reconsider issues related to Daoud's mental health treatment at the hearing in this matter.

If Daoud wishes to renew his claim for preliminary injunctive relief based on the lack of adequate mental health care he is presently being given at the HCHC, he should submit the report of the Boston doctor, or other evidence, to demonstrate his entitlement to relief. Upon receipt of such documentation, and Daoud's renewed request, the court will determine whether to consider anew Daoud's claim that he is not

being provided adequate mental health care at the HCHC and is, on that basis, entitled to preliminary injunctive relief.

    B.   <u>Issues to be Considered at Hearing</u>

The court will schedule a hearing on the issue of whether Daoud is entitled to injunctive relief to prevent the physical harm he alleges: continuing infliction of retaliatory acts against him, including beatings or other physical abuse, unnecessary use of OC Spray, and the denial of food and humane conditions of confinement. As stated above, the court will not, on the evidence presently before the court, consider Daoud's mental health claims at this time.

III. <u>Witnesses</u>

    A.   <u>Jail Officials</u>

With the exception of Mackey and Fournier, Daoud has not named the individuals responsible for inflicting the specific retaliatory acts upon him that are at issue here. However, the incident reports prepared by HCHC staff and submitted to this court to date (doc. nos. 47-1 and 49-1) reveal that the following HCHC employees were involved in the March 24, 2011, 9:45 a.m. incident: Sgt. Jordan, Sgt. Brown, FTO Phillips, Lt. Robbins, D.C.O.S. Martineau, Capt. Hiscoe, Nurse Cummings and Officers Higgins, Jubinville, Thornell, and Barbera. The following HCHC employees were involved in the March 24, 2011,

11:50 a.m. incident: Sgt. Brown, Lt. Robbins, D.C.O.S. Martineau, Nurse Cummings, and Officers Barbera, Robinson, Thornell, and Thompson.

Daoud has supplied neither information about the alleged incident that occurred on April 24, 2011, nor any identifying information about any officers or other HCHC employees involved in incidents that occurred on April 22 and 24, 2011.  So that defendants can properly prepare for the hearing on this motion, Daoud is directed to provide: (1) what he claims occurred during the incident on April 24, 2011; and (2) the names of individuals responsible for any acts alleged to have occurred on April 22, 2011, or April 24, 2011.  If Daoud does not know their names, Daoud is directed to provide as much identifying information as possible, such as a physical description or an indication of when and where the jail official is assigned to work, so that defendants might identify those individuals and have them available to testify, if they so choose.

    B.    <u>Plaintiff's Inmate Witnesses</u>

Plaintiff has requested that the court direct transport of the following HCHC inmates to the hearing on this matter:

>Troy Marchwicz
>Scott Frechette
>Adam Santiago
>James McConnell (or McGonnell)

Plaintiff has stated only that these inmates will tell the court "what they did to me on April 24, 2011." It is not clear whether Daoud is referring to either of the March 24, 2011, incidents, the April 22, 2011, incident, or another incident occurring on April 24, 2011 (which is not currently described in the pleadings).

The court may authorize the issuance of a Writ of Habeas Corpus Ad Testificandum, if it deems the testimony of a witness is necessary. See 28 U.S.C. § 2241(c)(5); United States v. Kenaan, 557 F.2d 912, 916 (1st Cir. 1977). No authority provides a prisoner with an unfettered right to call witnesses at a court proceeding in a civil case. See Cookish v. Cunningham, 787 F.2d 1, 4-5 (1st Cir. 1986). The court may require a party to demonstrate that an inmate witness' testimony is relevant, necessary, and not cumulative of other evidence prior to issuing a Writ of Habeas Corpus Ad Testificandum directing the prison to produce a prisoner witness in court to testify. Id.

Here, Daoud has listed prisoner names and indicated that those prisoners can tell the court what happened and "what they did to me on 4/24/2011." Daoud has not stated: (1) what he anticipates the witnesses will say; (2) whether the witnesses were eyewitnesses to any relevant event or are able to provide appropriate evidence by some other means; or (4) whether the

10

testimony of each witness will be unique or repetitive of the testimony of the others.

If Daoud can demonstrate a need for these witnesses, the court will order them produced pursuant to 28 U.S.C. § 2241(c)(5). In order to make this showing, Daoud should submit affidavits signed by his prospective witnesses. If plaintiff is unable to obtain affidavits from these witnesses, he may submit his own affidavit. In either case the following information should be included for each inmate witness plaintiff seeks to call at the hearing on the motion to transfer:

1. The name of the witness;

2. The type of witness (e.g., eyewitness to any relevant event; witness to relevant facts; character witness, etc.);

3. The specifics and substance of the anticipated testimony of the witness; and

4. Whether the witness will provide testimony that is noncumulative of other testimony and evidence in the case.

Upon receipt of this information from Daoud, the court will determine whether to issue a Writ of Habeas Corpus Ad Testificandum or other appropriate order. See Cookish, 787 F.2d at 4-5.

**Conclusion**

The court directs as follows:

1. A hearing on Daoud's motion to transfer sentence (doc. nos. 43, 49, and 50) will be scheduled at:

>       July 7, 2011, at 10:00 a.m.
>
>    Warren Rudman United States Courthouse
>              55 Pleasant Street
>           Concord, New Hampshire

2. The hearing will address the necessity for injunctive relief as a result of alleged retaliatory acts taken by HCHC personnel for the filing of this lawsuit. The court will not consider at the hearing any evidence pertaining to Daoud's alleged lack of adequate mental health care.

3. On or before June 20, 2011, Daoud must:

   A. Provide the court and defendants with the names of HCHC personnel involved in any incident occurring on April 22, 2011, or April 24, 2011, if plaintiff seeks to reference those incidents at the hearing in this matter. Plaintiff is advised that a failure to provide names or other identifying information of HCHC employees involved in the alleged incidents may result in the court's decision not to receive evidence regarding those incidents.

   B. Provide the court and defendants with the information specified above regarding each inmate witness Daoud seeks to call at the hearing and the witnesses' anticipated

testimony by affidavit of the witness. Daoud's own averment will be accepted in satisfaction of this Order if Daoud shows that he was unable to obtain affidavits from the witnesses.

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date: June 13, 2011

cc: Mohamed Daoud, pro se
    John A. Curran, Esq.
    Carolyn Kirby, Esq.